## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Jules Reynolds, | Case No. 23-CV-0283 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Covenire Care Nokomis, LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiff Marcus Jules Reynolds's (1) Amended Complaint (Dkt. 5) and (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2 ("IFP Application")). For the following reasons, the Court recommends dismissing the Amended Complaint and denying the IFP Application.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This action commenced on February 3, 2023, when the Court received Reynolds's original Complaint (Dkt. 1) and the IFP Application. (*See* Dkt. 2.) The gravamen of this action is that Reynolds's former employer—Covenire Care Nokomis, LLC ("Covenire")—discriminated against him in violation of the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 (codified as amended, as relevant here, in scattered sections of 42 U.S.C.) ("ADA"). The factual basis provided for these claims were as follows:

(1)   I was denied accommodation after I hurt myself on the job

> (2)  Unlawful discharge after I tried to complete my Relia (Computer train yerarly) [sic] on 12/31/18 I was told I was discharged.

(Dkt. 1 at 5.)

On March 31, 2023, this Court entered an order concluding that the Complaint failed to state a claim.  (*See* Dkt. 3 at 4-5.[1])  The Court therefore gave Reynolds a chance to file an amended complaint and referred him to the Federal Bar Association's Pro Se Project ("PSP") for potential assistance.  (*See id.*)

On April 27, 2023, the Court received the Amended Complaint, a one-page filing with one paragraph of substantive allegations:

> On September 21, 2018 at 8:00PM I was transferring resident 304.  During the transfer resident had unintentional muscle spasms causing my back sprain.  I was denied light duty work, disability for workers comp.  I filed complaints with all required State agencies.  A Civil lawsuit that was suppressed by tech complications which ended in a Judgement summary.  Which Civil Rights were not met due to complications with the Zoom system and the lack of proper investigation during the years of the Pandemic.  In conclusion the two (2) charges are refusal of light duties.  Discrimination of Sex(Male) in retaliation for complaint.

(Dkt. 5 at 1 (errors in original).)  In a paragraph otherwise devoted to relief requests, Reynolds also alleges that he "was released all employment duties according to nursing staff."  (*Id.* (same).)

The Amended Complaint does not specify the statute (or statutes) under which Reynolds seeks relief.  But the original Complaint suggests that Reynolds seeks relief

---

[1] Citations to filed materials use the page numbers assigned by the District's CM/ECF filing system.

under (1) the ADA; (2) Minn. Stat. § 363A.08, subd. 2; and (3) *id.* § 363A.15.  (*See* Dkt. 1 at 3.)  For relief, Reynolds seeks monetary damages, though the exact amount requested is unclear.[2]

## II.   ANALYSIS

### A.   Standards of Review

Instead of submitting this action's filing fee, Reynolds submitted the IFP Application, which suggests that as a financial matter, he qualifies for *in forma pauperis* ("IFP") status.  (*See* Dkt. 2.)  Under the federal statute governing cases filed by IFP litigants, however, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).

When reviewing whether a complaint states a claim on which a court may grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)).  A complaint's factual allegations need not be detailed, but must "raise a right to relief above the speculative level."  *Bell Atl.*

---

[2]   Reynolds's request for relief reads as follows: "My compensation request of $150.000 [sic] for FIVE(5) of non-employment $75,000 for each charge, $150.000 [sic] for emotional stress, for five(5) years my Civil Liberties have been stagnated.  And systematic oppression of behavior of employee rights."  (Dkt. 5 at 1.)

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When assessing a complaint's sufficiency, a court may disregard legal conclusions couched as factual allegations. *See, e.g., id.* (citing *Twombly*, 550 U.S. at 555). District-court assessments of whether a pleading states a claim are "context-specific"; a court must "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g., Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (making same points (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)). Courts should construe pro se complaints "'liberally,'" but such pleadings must still allege enough facts to support the claims advanced. *See, e.g., Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

**B.     ADA Claims**

The Court begins with Reynolds's ADA claims. Reynolds does not specify what ADA provision (or provisions) supports his claims. Review suggests that the best prospect is 42 U.S.C. § 12112(a), under which "[n]o covered entity[3] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

---

[3]    "Covered entity" here means "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2).

To allege a § 12112(a) claim, a plaintiff must allege that he "'(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability.'" *Aronson v. Olmsted Med. Ctr.*, No. 22-CV-1594 (ADM/JFD), 2023 WL 2776095, at *5 (D. Minn. Apr. 4, 2023) (quoting *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013)); *see also, e.g.*, *Parker v. Garda World Sec. Servs.*, No. 4:23-CV-0383 (MTS), 2023 WL 3582554, at *2 (E.D. Mo. May 22, 2023) (presenting same list (citing *Hill*)); *Goeldner v. Union Pac. R.R. Co.*, No. 4:19-CV-00692 (NKL), 2020 WL 1148584, at *6 (W.D. Mo. Mar. 9, 2020) (presenting similar list (quoting *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019)); *Walter v. Thrifty Drug Stores, Inc.*, No. CV 15-3684 (DSD/SER), 2016 WL 1065812, at *4 (D. Minn. Mar. 16, 2016) (citing *Huber v. Wal Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007) ("To properly allege a failure to accommodate, Walter must assert that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual, and (3) suffered an adverse employment action as a result of the disability.")). The Court perceives several problems here relating to the disability element.

Under the ADA, "disability" means (as relevant here) either "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment."[4] 42 U.S.C. § 12102(1)(A), (C). Under the having-an-impairment prong, "major life activities include, but are not limited

---

[4] "Disability" can also mean having "a record of such an impairment," 42 U.S.C. § 12102(1)(B), but the Amended Complaint does not plausibly plead that Reynolds is disabled under this definition.

to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of [various] major bodily function[s]." *Id.* § 12102(2)(A)-(B).  In relevant part, the Amended Complaint states that Reynolds had a "back sprain," but does not allege that this sprain substantially limited any major life activities or the operation of any major bodily function.  Reynolds therefore has not alleged being disabled under the term's having-an-impairment definition.  *See, generally*, *White v. Riverview Sch. Dist.*, No. 05-2920, 2007 WL 1226412, at *4 (8th Cir. Apr. 27, 2007) (finding that while the plaintiff listed ailments as including diabetes and related hypertension, anemia, arthritis, and back problems, her claim failed without providing any evidence of their impact on her ability to engage in major life activities); *Dyer v. Olson*, No. 20-2342 (PAM/ECW), 2021 WL 2210522, at *4 (D. Minn. June 1, 2021), *appeal dismissed sub nom. Dyer v. RRD Headquarters Chicago*, No. 21-2448, 2021 WL 6210682 (8th Cir. Aug. 6, 2021) ("She makes no timely claim regarding a disability **nor does she explain how her alleged PTSD constitutes a disability protected under the ADA**.  She does not plead that she was otherwise qualified to perform the essential functions of her job, either with or without accommodation.  Such allegations are fundamental to a claim for disability discrimination, and Dyer's failure to include any allegations from which the Court could conclude that she was disabled or an otherwise qualified individual are fatal to her ADA claims.") (internal citations omitted) (emphasis added).

This leaves the regarded-as-having prong. Under this "disability" definition, "[a]n individual meets the requirement . . . if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

But there is a problem with slotting Reynolds into this "disability" definition—nothing in the Amended Complaint suggests that Reynolds was "subjected to an action prohibited" by the ADA **because of** an "actual or perceived physical or mental impairment."

- Reynolds suggests that he was "denied light duty work" as well as "disability for workers comp" (Am. Compl. 1), but whatever these statements mean, they do not plausibly suggest that Covenire did something to him **because of** an actual or perceived impairment.

- The Amended Complaint also contains the statement "Discrimination of Sex(Male) in retaliation for complaint" (*id.*), but of course this seems to suggest discrimination against Reynolds based on other grounds, not because of an actual or perceived impairment.

- Finally, Reynolds does state that in December 2018 he was "released [from] all employment duties" (*id.*), but no allegations link this conclusory assertion to some sort of impairment, as opposed to some other ground.

The upshot of all this is that the Court recommends dismissing the Amended Complaint without prejudice to the extent that it asserts a § 12102(a) claim against Defendant. Because § 12102(a) is Reynolds's best prospect for an ADA claim here, this means that the Court recommends dismissing the Amended Complaint without prejudice to the extent it seeks to bring an ADA claim.

7

C.  **Claims Under Minn. Stat. § 363A.08[5]**

Under Minn. Stat. § 363A.33, subd. 1, a plaintiff can bring "a civil action seeking redress for an unfair discriminatory practice." Under Minn. Stat. § 363A.08, subd. 2, as relevant here:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of . . . sex, . . . [or] disability . . . to:
>
> (1) refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or
>
> (2) discharge an employee; or
>
> (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Given the Amended Complaint's allegations, the Court assumes that Reynolds means to press claims of sex- and disability-discrimination based on the second prong —and possibly the third prong—of the text quoted here.

To state a discriminatory-discharge claim under the above second prong, a plaintiff must allege that he or she "'(1) [is] a member of a protected class; (2) [was] qualified for the position from which they were discharged; (3) [was] discharged; and (4) [was] replaced by a non-member of the protected class.'" *Aronson*, 2023 WL 2776095, at *3 (citing Minnesota cases). A plaintiff can also plead the fourth element by

---

[5] The Court also notes that to the extent that this Report and Recommendation is adopted with respect to the ADA claim, the Court could also decline supplemental jurisdiction over the state law claims, *see Hervey v. Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008) and the Court recommends doing so.

alleging that "'circumstances exist that give rise to an inference of discrimination.'" *Id.* (quoting *Eilefson v. Park Nicollet Health Servs.*, No. A22-0189, 2022 WL 3149256, at *4 (Minn. Ct. App. Aug. 8, 2022)).  Similarly, to state a claim under the third prong, a plaintiff must allege that he or she "(1) [is] a person [within an MHRA protected class]; (2) [is] otherwise qualified to perform the essential functions of [a] job; and (3) suffered an adverse employment action because of [his or her protected class].'" *Semler v. Harpstead*, No. A22-0204, 2022 WL 9612051, at *3 (Minn. Ct. App. Oct. 17, 2022) (quoting *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001)).

With respect to Reynolds's sex-discrimination claims, the Court concludes that he fails to state a claim under either prong of § 363A.08, subd. 2.  With respect to the second prong claim, nothing in the Amended Complaint suggests that Defendant replaced Reynolds with a woman, and the little detail provided does not give rise to a plausible inference of sex discrimination.  Any sex-based third prong claim has the same problem: nothing in the Amended Complaint suggests that Reynolds faced any adverse employment action because of his sex.  So the Court recommends dismissing the Amended Complaint without prejudice to the extent it seeks to bring a sex-discrimination claim under § 363A.08, subd. 2.

As for disability-discrimination claims, Reynolds faces the same problem with a second prong claim: nothing in the Amended Complaint alleges that Covenire replaced Reynolds with a nondisabled person, and there is too little detail to suggest a plausible disability-discrimination inference.  This leaves a disability-based prong (3) claim, but

9

here again the Court concludes that Reynolds fails to state a claim. The MHRA defines a disabled person, as relevant here, as "any person who . . . has a physical, sensory, or mental impairment which materially limits one or more major life activities . . . [or] . . . is regarded as having such an impairment." Minn. Stat. § 363A.03, subd. 12. This "materially limits" language may create a broader definition of "disability" than does the ADA's "substantially limits" language, *see Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 739 n.2 (D. Minn. 2017) (discussing the point), *aff'd on other grounds*, 910 F.3d 399 (8th Cir. 2018), but even under a broader reading, the Court concludes that the analysis above with respect to the ADA claims carries over here. *Cf. St. Martin v. City of St. Paul*, 680 F.3d 1027, 1034 (8th Cir. 2012) ("Analysis of a ADA claim applies equally to a MHRA claim." (citing *Loye v. Cnty. of Dakota*, 625 F.3d 494, 497 n.2 (8th Cir. 2010)). On either relevant MHRA definition of "disabled person," Reynolds has failed to allege that he qualifies.

The Court therefore recommends dismissing the Amended Complaint to the extent it seeks to bring a claim under Minn. Stat. § 363A.08.

D.   **Claims Under Minn. Stat. § 363A.15**

As noted above, Minn. Stat. § 363A.33, subd. 1, lets plaintiffs bring suits addressing "unfair discriminatory practices." Section 363A.15 explains that certain "reprisals" qualify:

> It is an unfair discriminatory practice for any individual who participated in the alleged discrimination . . . to intentionally engage in any reprisal against any person because that person:

>   (1)   opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter; or
>
>   (2)   associated with a person or group of persons who are disabled or who are of different race, color, creed, religion, sexual orientation, or national origin.
>
>   A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment.  It is a reprisal for an employer to do any of the following with respect to an individual because that individual has engaged in the activities listed in clause (1) or (2): refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status; or inform another employer that the individual has engaged in the activities listed in clause (1) or (2).

To allege a § 363A.15 claim, a plaintiff must allege "'(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.'" *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (quoting *Hoover*, 632 N.W.2d at 548); *see also, e.g.*, *Lissick v. Andersen Corp.*, 996 F.3d 876, 885 (8th Cir. 2021) (quoting *Bahr*).

In this Court's view, the Amended Complaint does not allege a § 363A.15 claim. Its terse discussion, even considered alongside the Complaint's own minimal allegations, does not indicate that Reynolds engaged in statutorily protected conduct of the sort § 363A.15 protects.  Relatedly, the Amended Complaint does not suggest that any adverse employment action that Reynolds experienced was "causal[ly] connected" to

such conduct.[6] The Court therefore recommends dismissing the Amended Complaint to the extent it seeks to bring a § 363A.15 claim.

**E.    Summary**

Given the above discussion, the Court recommends dismissing the Amended Complaint (without prejudice) in its entirety. Given this recommendation, the Court also recommends denying the IFP Application as moot.

## III.    RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Plaintiff Marcus Jules Reynolds's Amended Complaint (Dkt. 5) be **DISMISSED** without prejudice.

2. Reynolds's IFP Application (Dkt. 2) be **DENIED** as moot.

DATED: August 1, 2023                                       *s/Elizabeth Cowan Wright*
                                                                                  ELIZABETH COWAN WRIGHT
                                                                                  United States Magistrate Judge

---

[6]    The Court acknowledges that an employer's reprisal response to an employee seeking a disability accommodation may result in a viable retaliation claim under both the ADA and MHRA. *See Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018); *Stockton v. Nw. Airlines, Inc.*, 804 F. Supp. 2d 938, 952 (D. Minn. 2011) (citing *Kirkeberg v. Can. Pac. Ry.*, 619 F.3d 898, 907–08 (8th Cir.2010); *Hoover v. Norwest Private Mortgage Banking,* 632 N.W.2d 534,549 (Minn.2001)). However, there are no allegations of reprisal based on his alleged request for light duties.

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).